Katherine N. HERRINGTON and Helen P. Quiovers, Individually and on behalf of all other similarly situated, Plaintiffs,

v.

UNION PLANTERS BANK, N.A., a national banking association; and Union Planters Bank of Mississippi, a corporation, Defendants.

No. Civ.A. 2:98CV231GR.

United States District Court,
S.D. Mississippi,
Southern Division.

Jan. 21, 2000.

Kent D. McPhail, Dumas & McPhail, L.L.C., Mobile, AL, for plaintiff.

W. Wayne Drinkwater, Jr., O. Stephen Montagnet, III, Shawn N. Sullivan, Lake Tindall, LLP, Jackson, MS, for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motions to compel arbitration [8–1], for dismissal of class action allegations [8–2], and for dismissal, or in the alternative, to stay action pending arbitration [8–3], filed by the defendants, Union Planters Banks, N.A., a national banking association, and Union Planters Bank of Mississippi, a corporation. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### Statement of Facts

Prior to January of 1998, the plaintiffs, Helen Quiovers and Katherine Herrington,

opened deposit accounts with the Magnolia Federal Savings and Loan Association [Magnolia Federal]. (Ct.R., Doc. 8, Exhs.1–2.) Upon opening the accounts, the plaintiffs signed signature cards whereby they agreed to terms and conditions of deposit agreements which could be subsequently amended. (*Id.*) Magnolia Federal did not require customer disputes to be arbitrated. (*Id.* at Exh. 1, pp. 13–14.)

On November 1, 1997, Magnolia Federal merged with and into Union Planters Bank of Southern Mississippi, and on January 1, 1998, Union Planters Bank of Southern Mississippi merged with and into Union Planters Bank, N.A. [Union Planters], a national banking association headquartered in Memphis, Tennessee. (Ct.R., Doc. 8, Exh. 3, ¶ 3.) Thus, Union Planters is the successor by merger of Magnolia Federal.

In March of 1998, Union Planters notified each of Magnolia Federal's former customers, including the plaintiffs, of changes in the terms and conditions of their deposit accounts. (Ct.R., Doc. 8, Exh. 3, ¶ 2.) Specifically, Union Planters sent each account holder a letter and a revised "Deposit Account Agreement and Disclosure" [revised deposit agreement] notifying them that such changes would be effective May 1, 1998. (*Id.* at Exh. 3(a).) The relevant portion of Union Planters' revised deposit agreement is stated as follows:

INTRODUCTION. In this Deposit Account Agreement and Disclosure, each and all of the depositors are referred to as 'you' and 'your.' The Financial Institution is referred to as 'we,' 'our,' and 'us.' ...

ARBITRATION. You should contact us concerning any problems or questions you may have about your accounts or any of our services. We realize that from time to time a disagreement may arise between you and us in relation to your accounts with us, or other services we provide to our customers. In the event

of any dispute, disagreement, claim, or controversy (a 'Dispute' or 'Disputes') between you and us relating in any way to this Agreement; or any amendments or supplements to this Agreement, or any other agreements, schedules, rules, statements, or disclosures; or in relation to any deposit account you maintain with us; or in relation to any services we may provide you at our banking offices, ATM machines, or other facilities; you agree that any such Dispute will be resolved through the process of binding arbitration ('Arbitration'), regardless of when the Dispute arose. Binding arbitration is a means of resolving conflicts outside of the public court system.

YOU UNDERSTAND AND AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL OR A TRIAL BEFORE A JUDGE IN A PUBLIC COURT.

This agreement to resolve all Disputes through Arbitration ('Arbitration Agreement') includes any Disputes based on contract principles, tort principles (including claims of any injury or damage to person or property), statutory law, common law, equitable claims, or claims for breach of fiduciary duty or other wrongful acts. Questions as to interpretation of this or any other agreement, or whether a Dispute is subject to Arbitration according to these provisions are to be decided by Arbitration. Arbitration, including the selection of the arbitrator, will be administered according to the commercial arbitration rules of the American Arbitration Association, and judgment upon any award rendered by the arbitrator(s) may be entered by any state or federal court having jurisdiction. **There may be no claims or recovery of punitive, incidental, or consequential damages as to any Dispute submitted to Arbitration.** The decision of the arbitrator(s) will be final and binding.

In any arbitration, the rights and liabilities of the parties shall be determined

according to the federal laws of the United States and the laws of the State of Tennessee, unless the law of another state is determined by the arbitrator(s) to govern the subject of the Dispute. All statutes of limitations applicable to any Dispute apply to any Arbitration proceeding initiated under this Arbitration Agreement.

This Arbitration Agreement, and the exercise of any rights described, will not limit our rights to (1) foreclose against any real or personal property collateral by the exercise of a power of sale under a deed of trust, mortgage, or other security agreement or instrument, or applicable law; (2) to exercise self-help remedies such as setoff and repossession rights; or (3) to obtain provisional or ancillary remedies, including without limitation, injunctive relief or the appointment of a receiver from a court having jurisdiction before, during, or after any Arbitration. If we take action to begin a judicial proceeding, or pursue any provisional or ancillary remedy in the courts, or exercise self-help remedies, such action will not waive the rights of either you or us to have the Dispute resolved by Arbitration according to this Arbitration Agreement.

BY SIGNING A SIGNATURE CARD AND USING YOUR ACCOUNT YOU AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT. BY SIGNING YOUR SIGNATURE CARD YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION AGREEMENT, INCLUDING THE WAIVER OF YOUR RIGHT TO A JURY TRIAL OR TRIAL BY A JUDGE IN A PUBLIC COURT.

.    .    .    .    .

**CUSTOMER ACKNOWLEDGMENT OF AGREEMENT.** The information contained in the Deposit Account Agreement, the Rate and Fee Schedule, the Electronic Funds Transfer Agreement and disclosure, the Truth In Savings disclosures, the Funds Availability Policy and disclosure and any other supplements or amendments to these or any other agreements, schedules, rules, statements, or disclosures constitutes the entire agreement governing the account you have opened, which you agree to observe. You agree that these rules, terms, and conditions shall also govern any other deposit account you have with us. By signing your account application and/or account signature card, you acknowledge that you have read, understand, and agree to be bound by the terms and conditions stated in the Deposit Account Agreement, the Schedule of Fees and Charges for Deposit Accounts, the Electronic Funds Transfer Agreement and disclosure, the Truth In Savings disclosures, the Funds Availability Policy and disclosure, and any amendments or supplements to these or any other agreements, schedules, rules, statements, or disclosures. If any changes or amendments are made to the rules, regulations, terms, or conditions associated with your account, you will be informed of such changes as explained further in the Deposit Account Agreement, and you will be obligated according to such changes if you continue to maintain or use your account.

(Ct.R., Doc. 8; Exh. 3(a) pp. 1, 12–14.)

Upon receiving the letter and revised deposit agreements, neither Quiovers nor Herrington closed their deposit accounts. Instead, they continued to utilize those accounts at Union Planters after the terms and conditions of the revised deposit agreements went into effect. (Ct.R., Doc. 8, Exh. 3, ¶ 2.) Thereafter, the plaintiffs brought suit under the Truth In Savings Act [TISA], 12 U.S.C. § 4301, *et seq.*, on behalf of a purported class essentially claiming that Union Planters failed to disclose its policy of posting debits to the plaintiffs' deposit accounts which allegedly caused the account holders to incur maxi-

mum service charges.[1]  (Ct.R., Doc. 1.)

*Legal Analysis*

The first principle enumerated by the Fifth Circuit is that, "[a]rbitration is a matter of contract between the parties, and a court cannot compel a party to arbitrate a dispute unless the court determines the parties agreed to arbitrate the dispute in question." *Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir.1998) (citations omitted).  In order to determine whether the parties agreed to arbitrate their dispute, the Court must decide the following: "(1) whether a valid agreement to arbitrate between the parties exists; and (2) whether the dispute in question falls within the scope of that arbitration agreement." (*Id.* at 1065) (citations omitted).  If the Court finds that the parties agreed to arbitrate their dispute, the Court must then examine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996) *quoting Mitsubishi Motors Corp., v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

I. *Whether the Arbitration Provision is Valid, Irrevocable, and Enforceable*

The Federal Arbitration Act [FAA] provides that, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  It is not disputed that the written arbitration provision in the revised deposit agreement was created to settle controversies of transactions involving commerce.  The Court therefore finds that the arbitration agreement is valid, irrevocable, and enforceable.

II. *Whether the Plaintiffs' TISA Allegations are Within the Scope of the Arbitration Agreement*

The United States Supreme Court has stated that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) *quoting United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).  Arbitration agreements involving statutory claims are enforceable pursuant to the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (citations omitted).  As previously stated, the arbitration provision in the instant action provided that disputes arising under statutory law are to be arbitrated.  The Court therefore finds that the plaintiffs' TISA allegations are subject to the arbitration agreement.

III. *Whether the Parties Agreed to Arbitrate*

The FAA was created in order "to place arbitration agreements on the same footing as other contracts." *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647.  In order to analyze whether the plaintiffs are bound by the written arbitration provision, the Court must therefore look to "ordinary contract principles." *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir.1987) (citations omitted).

When the plaintiffs signed their initial signature cards, they agreed that the terms and conditions of their deposit accounts could change in the future upon sufficient notice.  It is undisputed that the plaintiffs were given notice in March of

---

**1.**  The TISA requires depository institutions to uniformly provide certain disclosures to consumers so that they "can make a meaningful comparison between the competing claims of depository institutions with regard to deposit accounts."  12 U.S.C. § 4301.

1998 that their accounts were being revised to include an arbitration clause. It is further undisputed that the plaintiffs continued to use their accounts after the effective date of the arbitration clause. Nevertheless, the plaintiffs claim that they did not agree to arbitrate.

■ In support, the plaintiffs assert that Union Planters attempted to "slip in" an arbitration provision without adequately informing them that the original terms and conditions of their deposit agreements had changed. (Pls.' Mem. in Resp. to Defs.' Mot. to Compel Arbitration, p. 6.) The plaintiffs are essentially arguing that their deposit agreements with Magnolia Federal were never amended to include an arbitration provision because the terms "revised" and "amended" are not synonymous. The Court finds the plaintiffs' arguments to be without merit.

■ The cover letter accompanying the "revised Deposit Account Agreement" explicitly informed the plaintiffs that the revised deposit agreement contained "important information about [the depositor's] account." (Ct.R., Doc. 8, Exh. 3(a).) After reviewing the letter and revised deposit agreement, the Court finds that the plaintiffs were sufficiently notified that the terms and conditions of their accounts would change effective May 1, 1998. The plaintiffs' apparent failure to read the revisions to their accounts is irrelevant to the issue of whether they agreed to arbitrate or are subject to those changes. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148–50 (7th Cir.1997) (arbitration clause in the terms and conditions of purchase was binding on purchaser even if he did not read the arbitration clause).

Moreover, the terms revise and amend are interchangeable. Amend simply means "[t]o change, correct, revise," while revise is defined as "[t]o go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it." BLACK'S LAW DICTIONARY 80, 1321 (6th ed.1990); *See also* WEBSTER'S INTERNATION-AL DICTIONARY 1944 (3rd ed. 1981) (Revise is defined as "to make a new, amended, improved, or up-to-date version of [an agreement]"). Common sense dictates that a revised deposit agreement contains terms and conditions that are different from its predecessor. Regardless, the Court finds that sufficient notification to the plaintiffs of the revisions effectively amended the terms and conditions of the plaintiffs' deposit agreements as contemplated when the plaintiffs initially opened their accounts and agreed to such amendments.

■ The plaintiffs further assert that they did not agree to the arbitration clause because they did not sign new signature cards after Magnolia Federal merged with Union Planters. In support, they refer only to a portion of the revised deposit agreement stated as follows: "[b]y signing your signature card you acknowledge that you have read and understand this arbitration agreement." (Pls.' Mem. in Sup. of Resp. to Defs.' Mot. to Compel Arbitration, p. 4.) The Court finds the plaintiffs' argument to be without merit.

Although the revised deposit agreement was expressed in terms of future account holders, the arbitration clause was mandatory and all-inclusive of each depositor. A simple review of the arbitration provision in the revised deposit agreement indicates that it was not limited to persons who subsequently signed a signature card. For example, the arbitration provision required "all" of Union Planters' depositors to agree that disputes would be subject to binding arbitration effective May 1, 1998. The customer acknowledgment section also informed both new and old customers that the terms and conditions of the revised deposit agreement governed their accounts. More importantly, the customer acknowledgment section notified all depositors that they were obligated to the changes specified in the revised deposit agreement if they continued to maintain or use their accounts.

The absence of the plaintiffs' signature on a new card does not alter the fact that the plaintiffs accepted the terms of the arbitration agreement by continuing to utilize their accounts. *See Valero Refining, supra,* 813 F.2d at 64 (citations omitted) ("[a] party may be bound by an agreement to arbitrate even in the absence of his signature"); *Stiles v. Home Cable Concepts, Inc.,* 994 F.Supp. 1410, 1416, 1418 (M.D.Ala.1998) (an arbitration clause contained in an amendment to an account agreement was binding on the accountholder absent his signature because he maintained his account after the effective date of the arbitration clause). The plaintiffs could have simply declined to accept the arbitration provision by terminating their account before the effective date of the amendment. Because the plaintiffs continued performance under the revised deposit agreements after May 1, 1998, the Court finds that the plaintiffs agreed to arbitrate their disputes with Union Planters.

## IV. *Whether the Arbitration Agreement Should be Enforced*

If the parties agrees to arbitration, they "should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi, supra,* 473 U.S. at 628, 105 S.Ct. 3346. Thus, the plaintiffs have the burden to show that Congress intended the TISA to override the provisions of the FAA. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (citation omitted). Such intent may derive from the statute's text, legislative history, "or from an inherent conflict between arbitration and the statute's underlying purpose." (*Id.* at 226, 107 S.Ct. 2332) (citations omitted). The Court must then weigh any arguments made by the plaintiffs against the strong federal policy in favor of arbitration, with any doubts resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Despite the fact that the plaintiffs agreed to arbitrate, they offer several arguments suggesting that the arbitration clause should not be enforced against them.

First, the plaintiffs maintain that they are entitled to pursue punitive or exemplary damages under the TISA and that the arbitration agreement is unenforceable because it specifically excludes such recovery. The Third Circuit rejected a similar argument by finding that a contractual waiver of punitive damages is irrelevant to the issue of whether the plaintiff's claims should be arbitrated, even if such damages are recoverable under the statute. *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 232 (3rd Cir.1997). Moreover, the United States Supreme Court has repeatedly stated that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi, supra,* 473 U.S. at 628, 105 S.Ct. 3346. Thus, the Court finds that a contractual waiver of punitive damages is not a valid ground for refusing to compel arbitration.

Nevertheless, the TISA allows recovery for both actual and statutory damages. A financial institution liable under the TISA can be assessed statutory damages in any amount between $100 and $1,000 in addition to actual damages suffered by an individual. 12 U.S.C. § 4310(a)(1), (2)(A). Although statutory damages seem penal in nature,[2] they do not share any common characteristics with punitive damages, *i.e.* wanton, reckless, malicious or oppressive behavior. BLACK'S LAW DICTIONARY 390–92 (6th ed.1990). Instead, statutory damages are assessed for

---

**2.** *See In re Wood,* 643 F.2d 188, 193 (5th Cir.1980) (statutory damages under the Truth in Lending Act [TILA] are remedial, not penal). Although not identical, the TILA provides for recovery similar to the TISA. *Cf.* 15 U.S.C. § 1640(a).

purely technical violations of a statute. *See Grant v. Imperial Motors,* 539 F.2d 506, 510–11 (5th Cir.1976) ("once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability" and must award the plaintiff statutory damages). Because the TISA does not authorize recovery of punitive damages, the Court finds that the waiver of punitive damages contained in the revised deposit agreements do not deprive the plaintiffs of their statutory rights to recovery guaranteed under the TISA.

█ Alternatively, courts have severed provisions which would otherwise render an arbitration agreement unenforceable. *Jones v. Fujitsu Network Communications, Inc.,* 81 F.Supp.2d 688, 693 (N.D.Tex.1999); *See Sims v. Unicor Mortgage, Inc.,* Civil Action No. 4:98cv25 [3] (even if a waiver of punitive damages is contrary to public policy, such provision is severable from an arbitration agreement). With due deference to the strong federal policy favoring arbitration, the Court alternatively finds that the waiver of punitive damages, if applicable to the plaintiffs' TISA allegations, is severable from the arbitration agreement.

█ Second, the plaintiffs contend that Congress enacted the TISA to limit or prohibit waiver of a judicial forum for class actions because Congress placed a limit on the recovery of a successful class.[4] The Court disagrees. As noted above, the plaintiffs have the burden to show that Congress intended to prevent waiver of a judicial forum for allegations asserted un-

der the TISA. The plaintiffs have failed to meet their burden. Rule 23 of the Federal Rules of Civil Procedure remains the sole legal ground to bring a class action. The TISA provision in question was simply not created to guarantee anyone a right to bring a class action, but was instituted for the purpose of limiting the recovery of those persons certified as a class. *See Sagal v. First USA Bank, N.A.,* 69 F.Supp.2d 627, 631–32 (D.Del.1999); *Lopez v. Plaza Finance Co.,* 1996 WL 210073 *3 (N.D.Ill.1996) (Congress did not create a statutory right to bring a class action under the TILA, it only placed a limit on liability for class actions under 15 U.S.C. § 1640(a)(2)(B)).

The Fifth Circuit has further stated that, "under [9 U.S.C.] § 4 of the Federal Arbitration Act the sole question for the district court is whether there is a written agreement among the parties providing for consolidated arbitration." *Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145, 150 (5th Cir.1987); *See also Champ v. Siegel Trading Co., Inc.,* 55 F.3d 269, 275 (7th Cir.1995) ("section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter"); *American Centennial Ins. Co. v. National Casualty Co.,* 951 F.2d 107, 108 (6th Cir. 1991) ("a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation"). Contrary to the plaintiffs' assertion, the reference to "each

---

**3.** *Simms* is an unpublished opinion provided by the defendants to the Court for review.

**4.** The provision referred to by the plaintiffs is stated as follows:

... any depository institution which fails to comply with any requirement imposed under this chapter or any regulation prescribed under this chapter with respect to any person who is an account holder is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person as a result of the failure;

(2)(B) in the case of a class action, such amount as the court may allow, except that—
(i) as to each member of the class, no minimum recovery shall be applicable; and
(ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same depository institution shall not be more than the lesser of $500,000 or 1 percent of the net worth of the depository institution involved.
12 U.S.C. § 4310(a)(1), (2)(B).

and all of the depositors are referred to as 'you'" throughout the deposit agreement, is not equivalent to a written agreement providing for consolidated arbitration. After reviewing the arbitration provision and determining that it does not expressly provide for consolidated arbitration, the Court finds that the plaintiffs are not entitled to arbitrate as a class. The Court therefore finds that the defendants' motion to dismiss the plaintiffs' class action allegations should be granted.

Finally, in their supplemental brief, the plaintiffs cite *Randolph v. Green Tree Fin. Corp.*, 178 F.3d 1149 (11th Cir.1999), a recent decision by the Eleventh Circuit reversing the district court's decision to grant a motion to compel arbitration in a TILA case, in support of their argument that the Court should not enforce the arbitration agreement. In *Randolph*, the purchaser of a mobile home sued her lender under the TILA for its failure to disclose a policy requiring purchasers to obtain insurance that would protect the lienholder in the event of default. (*Id.* at 1151.) The retail installment contract entered into between the purchaser and lender required all disputes to be resolved by binding arbitration. (*Id.*) The arbitration provision, however, failed to identify the allocation of filing fees, the apportionment of arbitrators' costs and expenses, and more importantly, whether the rules of the American Arbitration Association [AAA] would be used to govern the parties' dispute. (*Id.* at 1158.) Thus, the Court ultimately concluded that, "the arbitration clause in this case is unenforceable, because it fails to provide the minimum guarantees required to ensure that [plaintiff's] ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrators' fees, or other high costs of arbitration." (*Id.* at 1158 *citing Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998).)

■ In the instant action, the arbitration provision specifically provided that, "[a]rbitration, including the selection of the arbitrator, will be administered according to the commercial arbitration rules of the American Arbitration Association." The Court notes that the result in *Randolph* may have been different had the arbitration agreement specified certain guidelines by which the arbitration would proceed. More importantly, the Court in *Randolph* specifically limited its finding to the arbitration provision in question, and stated that it was not deciding "whether the TILA precludes all arbitration agreements" at that time. 178 F.3d at 1159. Such procedural posture leads this Court to conclude that arbitration agreements should be analyzed on a case-by-case basis.

The United States Supreme Court has repeatedly stated that, "[s]o long as the prospective litigant may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Gilmer, supra,* 500 U.S. at 28, 111 S.Ct. 1647 *quoting Mitsubishi, supra,* 473 U.S. at 637, 105 S.Ct. 3346. While it is conceivable that the plaintiffs' individual recovery in the instant action may be small, there is no evidence to indicate that successful arbitration in accordance with the rules of the AAA would not vindicate their rights by an award of actual damages, statutory damages, costs of the action and reasonable attorneys' fees against the defendants, similar to a Court of law.[5] Based on the plaintiffs' financial condition, the AAA also provides a procedure to waive fees. *See Dobbins v. Hawk's Enter.,* 198 F.3d 715, 717 (8th Cir.1999) (in a TILA case, the Court rejected the contention that arbitration fees under the AAA are unconscionable when the plaintiffs failed to utilize the AAA's fee waiver procedures). For these reasons, the Court finds that the remedial and deterrent functions of the

---

**5.** Civil liability for violation of the TISA entitles a successful plaintiff to actual damages, statutory damages not less than $100 and no greater than $1,000, costs of the action, and reasonable attorney's fees. *See* 12 U.S.C. § 4310(a)(3).

TISA are not circumvented by the requirement that the plaintiffs arbitrate.

Furthermore, the plaintiffs have failed to show that Congress intended for allegations arising under the TISA to override the FAA. The Court is also unaware of any authority which would support that position. The United States Supreme Court has consistently refused to create exceptions to the enforcement of arbitration clauses under the FAA for claims brought under the Securities Exchange Act, the Racketeer Influenced and Corrupt Organizations Act,[6] and the Age Discrimination in Employment Act.[7] Similarly, the Fifth Circuit had declined to create an exception from the FAA for claims under the Americans with Disabilities Act[8] and the Employee Retirement and Income Security Act.[9] At this time, the Fifth Circuit has not examined this issue under either the TISA or the TILA. Thus, with the strong federal policy favoring arbitration and the lack of any Congressional intent to the contrary, this Court finds no basis in which to carve out an exception from the FAA for allegations brought under the TISA.

 As noted above, the Court finds that the plaintiffs' TISA allegations are subject to arbitration. In such a situation, the Court should generally stay the proceedings until arbitration has been completed. 9 U.S.C. § 3. In the instant action, however, there is no reason to stay these proceedings because all of the plaintiffs' allegations are subject to arbitration. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) (a stay is not necessary when all of the plaintiff's issues are subject to arbitration). The Court therefore finds that the defendants' motion to compel arbitration should be granted and the instant action should be dismissed with prejudice.

*Conclusion*

For the reasons above, the Court finds that the plaintiffs agreed to arbitrate their TISA allegations which are subject to a valid, irrevocable, and enforceable arbitration agreement. The Court further finds no substantial reason to refuse to compel arbitration. The Court therefore finds that the defendants' motion to compel arbitration should be granted and the instant action dismissed with prejudice. The Court also finds that the defendants' motion to dismiss the plaintiffs' class action allegations should be granted. Each party shall bear their respective costs in association with these motions.

A separate Final Judgment in accordance with this Memorandum Opinion shall issue this date.

---

6.  *McMahon, supra*, 482 U.S. at 238, 242, 107 S.Ct. 2332.

7.  *Gilmer, supra*, 500 U.S. at 35, 111 S.Ct. 1647.

8.  *Miller v. Public Storage Management, Inc.*, 121 F.3d 215, 218 (1997).

9.  *Kramer v. Barney*, 80 F.3d 1080, 1084 (5th Cir.1996).