Raymond P. **GOETSCH,** individually and on behalf of all others similarly situated, Plaintiff,

v.

**SHELL OIL COMPANY,** and Associates National Bank (Delaware), Defendants.

No. Civ. 1:00CV64.

United States District Court, W.D. North Carolina, Asheville Division.

Nov. 28, 2000.

---

4. This document is also the one document subject to work product privilege protection.

Roman C. Pibl, John M.H. Hart, Kluttz, Reamer, Blakenship, Hayes & Randolph, LLP, Salisbury, NC, for Raymond P. Goetsch, Individually and on behalf of all others similarly situated, plaintiff.

S. Keith Hutto, Nelson Mullins Riley & Scarborough, Columbia, SC, Tracy E. Tomlin, Nelson, Mullins, Riley & Scarborough, Charlotte, NC, for Shell Oil Company, defendant.

Ralph H. Greil, Troutman Sanders, Atlanta, GA, James W. Williams, Roberts & Stevens, P.A., Asheville, NC, for Associates National Bank (Delaware), defendant.

## *MEMORANDUM AND ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the motion of Defendant Associates National Bank (Associates) to compel arbitration, filed October 23, 2000, and the Plaintiff's motion for class certification, filed October 25, 2000.

### I. PROCEDURAL BACKGROUND

Plaintiff filed this action on March 17, 2000, alleging claims for breach of contract, fraud, negligent misrepresentation, unfair and deceptive trade practices and violations of the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, the Fair Credit Billing Act, 15 U.S.C. § 1666, *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* Both Defendants filed answers asserting as affirmative defenses the existence of a binding arbitration agreement. Defendant Associates also moved to compel arbitration. Plaintiff, after having been notified by the Court that the case could not proceed as a class action without a motion for class certification, then so moved.

The Court will address first the motion to compel arbitration.

### II. STANDARD OF REVIEW

■ "The [Federal] Arbitration Act requires a federal court to grant a motion to stay a proceeding pending the arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir.1998) (quoting 9 U.S.C. § 3). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir.1996) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Nonetheless, the Supreme Court has held that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *American Recovery, supra* (citations omitted). If the arbitration clause at issue is "'susceptible of an interpretation that covers the asserted dispute,'" a party's motion to compel arbitration must be granted. *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir.1998) (quoting *United Steelworkers of America, supra*). Finally, federal law controls the interpretation of arbitration agreements even where, as in this case, a contract includes a choice-of-law

provision. *Smith Barney, Inc. v. Critical Health Sys. of North Carolina, Inc.*, 212 F.3d 858, 861 n. 1 (4th Cir.2000).

### III. FACTUAL BACKGROUND

Plaintiff has had a Shell Oil Company (Shell) credit card since 1979. Complaint, filed March 17, 2000, at ¶ 6. He alleges that from January 1999 through the date the complaint was filed, the Defendants failed to timely credit payments made on his account, causing him to be improperly levied with finance charges. *Id.*, at ¶'s 8–16. He also claims the Defendants failed to properly calculate the applicable interest rates and changed those rates without prior notification. *Id.*

In January 1999, Shell sold a portfolio of credit card accounts to Associates. Affidavit of Ronald P. Rossi, *attached to* Memorandum of Law in Support of Motion to Compel Arbitration and to Stay Action of Defendant Associates National Bank (Delaware), at ¶ 4. Goetsch does not dispute this sale, although he claims it occurred "on or after December 1, 1998." Complaint, at ¶ 4. And, he admits that after this sale, he received a notice from Associates which contained the following information:

> Please read this notice carefully for changes that will take place to the Shell credit card program. You may continue to use your Shell credit card to make purchases under your existing account terms until the 30th day after the statement date indicated on the enclosed billing statement.... After the Effective Date you may no longer make purchases under your existing account terms, but you may use your existing card ... to make purchases under a new account. *Any use of your card by you ... after the Effective Date will constitute your agreement to (i) open a new account effective as of the first day of the billing cycle in which your card was used after the Effective Date, and (ii) transfer the balance of your existing Shell account to your new account.*

**Exhibit A, *attached to* Affidavit of Raymond P. Goetsch, *attached to* Response Brief to Motion to Compel Arbitration, filed November 14, 2000 (emphasis added).**

This agreement also contained the following additional provisions:

> *We have the right to change the terms of this Agreement at any time.* Changes may include, but are not limited to, changing the Periodic Rate or method of determining the finance charge. If we make a change, we will give you notice as required by applicable law. Subject to the requirements of applicable law, any change to this Agreement will become effective at the time stated in our notice to you and, unless we specify otherwise, *the revised terms will apply to all outstanding unpaid indebtedness in your Account,* as well as new transactions.

> This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

> Notices to you, if mailed, *shall be deemed given when mailed to you* at the address given on the application or authorization form or to such other address you have given us by notice.

> In the unlikely event there is a controversy or claim between you and us involving a demand for $25,000 or more in value (including any claim(s) you assert on behalf of others or a class which when aggregated exceeds $25,000 or more in value), which cannot be resolved by negotiations between us, you agree that such controversy or claim shall be resolved by binding arbitration governed by the Federal Arbitration Act. Such arbitration shall be conducted in accordance with the Commercial Arbitration rules of the American Arbitration Association, and a judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.

**Exhibit A, *attached to* Complaint, at ¶ 's 12, 18, 21, 24 (emphasis added).**

Goetsch does not deny that he continued to use the Shell card and thereby accepted the new terms. The arbitration provision contained in the new agreement continued until March or April 2000 when Associates notified its active card holders that it would not participate in class action arbitrations. Exhibit 2, *attached to* Rossi Affidavit. Specifically, the notice provided in pertinent part:

Effective as of the first day of your billing cycle that begins on or after thirty (30) days from the "Closing Date" indicated on the enclosed statement, ... the changes described below will be made to the terms of your Account. You have the right to reject the change related to the Index [used to calculate finance charges] on your Account.... *You may not elect to reject the other changes described in this Notice of Change in Terms.*

*Id.* (emphasis added).

Plaintiff, who was an active card holder when this change went into effect, claims that he was never provided with this notice. Goetsch Affidavit, *supra.* Plaintiff also averred that he "was never given an option or chance to negotiate or respond to any of the terms and conditions. These things are forced upon you by the defendants.... They are presented to you after you already have a Shell credit card and are using it. They are presented to you as 'this is it,' you have no choice in the matter." *Id.,* at ¶'s 7–8. Nonetheless, Plaintiff does not dispute that he continued to use this card during March and April of 2000 and thereafter. "Between January, 1999 and the present [March 17, 2000], the Plaintiff has mailed to the Defendants at least the minimum payment required by each periodic statement. The Plaintiff accomplished these mailings by such methods that provided the Plaintiff with records of when the payments were received by the Defendants." Complaint, at ¶ 12.

## IV. DISCUSSION

Goetsch argues that the first arbitration clause is binding and this matter should be submitted for arbitration as a class action. However, he claims the second clause which deleted any possibility of arbitration of a class action may not bind him.[1] In other words, Plaintiff admits there was an agreement to arbitrate, but limits that agreement to the first arbitration provision. Despite the fact that he never canceled his account, Goetsch claims that the change in terms may not be applied retroactively to charges in-

curred prior to the effective date of the new arbitration provision. And, he claims, his complaint in this action was filed prior to the effective date of the new provision.

However, the notice of change in terms sent to Goetsch in 1999, to which he agreed, clearly provided that Associates had "the right to change the terms of this Agreement at any time.... [T]he revised terms will apply to all outstanding unpaid indebtedness in your Account, as well as new transactions." Exhibit A, *attached to* Complaint, at ¶ 12. This clear and unambiguous contractual term was accepted by the Plaintiff. Thus, the March 2000 revised terms apply to his unpaid balance and limit his ability to arbitrate as a class. The agreement clearly provides for retroactive effect. See, *e.g., HCMF Corporation v. District 28, UMWA,* 117 F.3d 1413 (table), 1997 WL 382026 (4th Cir.1997) (acknowledging that parties may agree to make arbitration provisions retroactive). After both modifications of terms, Goetsch continued to use the credit card and thus accepted the terms and provisions thereof. *Westendorf v. Gateway 2000, Inc.,* 41 UCC Rep.Serv.2d 1110, 2000 WL 307369 *3 (Del. Ch.), *aff'd,* 2000 WL 1535439 (Del.Super.Ct.2000) ("Delaware's Uniform Arbitration Act is consistent with the Federal Arbitration Act, and its strong federal policy in support of arbitration." (citations omitted)); *Johnson v. West Suburban Bank,* 225 F.3d 366, 369 (3rd Cir.2000) (Applying Delaware law, the Circuit held that "the public interest purposes behind the [TILA] penalty provisions.... are not in conflict with arbitration, even if arbitration clauses may prevent the bringing of class actions."); *accord, Hill v. Gateway 2000, Inc.,* 105 F.3d 1147 (7th Cir.), *cert. denied,* 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997).

Plaintiff cites an unpublished California case in support of his contention that the second arbitration clause may not be applied retroactively. *See, Long v. Fidelity Water Sys., Inc.,* 2000 WL 989914 (N.D.Cal.2000). That case, however, involved a credit card agreement containing no arbitration clause

---

1. In the brief, counsel states, *"Plaintiff does not object to arbitration so long as it is class action arbitration."* Response Brief, at 2. Nor do any of the parties contest that the contract "evidenc[es] a transaction involving commerce." 9 U.S.C. § 2.

which was later unilaterally modified to include one. *Id.*, at *3 ("Defendants never obtained any affirmative consent from [Plaintiff] regarding incorporation of the arbitration clause as part of the existing contract.... Defendants have cited no case that has upheld an arbitration agreement based on a plaintiff's failure to 'opt-out' of a defendants' unilateral imposition of an arbitration clause."). Moreover, the *Long* case applies Ninth Circuit law. The Third Circuit, applying Delaware law, has recently held as follows:

> Because [ ] the TILA ... [does not] explicitly preclude[ ] the selection of arbitration instead of litigation, a party who agrees to arbitrate, but then asserts that his or her statutory claim cannot be vindicated in an arbitral forum, faces a heavy burden. That burden has not been met here. As a predicate to this conclusion, we note our belief that the public interest purposes behind the civil penalty provisions of the statutes are not in conflict with arbitration, even if arbitration clauses may prevent the bringing of class actions.... [Arbitration] clauses are effective even though they may render class actions to pursue statutory claims under the TILA ... unavailable.... Because there is no irreconcilable conflict between arbitration and the goals of the TILA, we ... hold that claims arising [there]under ... may also be subject to arbitration notwithstanding the desire of a plaintiff who previously consented to arbitration to bring his or her claims as part of a class.

*Johnson*, 225 F.3d at 369, 379 (citing *Sagal v. First USA Bank, N.A.*, 69 F.Supp.2d 627 (D.Del.1999) (in which the Court enforced an arbitration clause inserted into a credit card agreement after initially providing that the bank could amend its agreement "at any time.")).

Plaintiff also alleges that he never received the March 2000 notification that class actions would no longer be subject to arbitration.

> Plaintiff[ ] suggest[s] that Defendant must establish that the arbitration notice inserts were actually delivered to [him]. However, the Court does not believe that Defendant should be held to such an exacting burden. Rather, a letter properly addressed, stamped and mailed may be presumed to have been received by the addressee in the due course of mail. Thus, Defendant need only prove that it properly mailed the arbitration notice to its card members. It is not necessary that Defendant prove actual receipt of the notice. Proof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business.

*Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 918 (N.D.Tex.2000) (citations omitted). That has been done here. *See* Rossi Affidavit, at 3–6. Moreover, the terms of the parties' contract provided that notice had been provided upon mailing to the Plaintiff's address. Exhibit A, *attached to* Complaint, at ¶ 21 ("Notices to you, if mailed, *shall be deemed given when mailed to you* at the address given on the application or authorization form or to such other address you have given us by notice."). Plaintiff's affidavit, in which he simply denies receipt of the notice, is "insufficient to undermine the presumption of receipt." *Marsh*, 103 F.Supp.2d at 919. Nor does the Plaintiff claim that he canceled his card membership at any time. *Id.*; *Herrington v. Union Planters Bank, N.A.*, 113 F.Supp.2d 1026, 1029–31 (S.D.Miss. 2000) (By failing to close their accounts and by continuing to use them under the revised agreement, the plaintiffs accepted those revisions, including the arbitration clause. "When the plaintiffs signed their initial signature cards, they agreed that the terms and conditions of their deposit accounts could change in the future upon sufficient notice."). The undersigned therefore concludes that the arbitration clause which prohibits arbitration as a class action is valid and enforceable. As a result, the undersigned is precluded from ordering class action arbitration. *Id.*, at 1033 (citing *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 275 (7th Cir.1995) ("section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter.")).

> [E]ven if the arbitration clause had been ambiguous as to its scope, our decision would be guided by the strong federal

policy favoring arbitrability, based on the Arbitration Act and repeatedly recognized by the Supreme Court and this Circuit.... "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Cara's Notions,* 140 F.3d at 571 (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)) (other citations omitted).

■ For purposes of finality, the undersigned will briefly address Plaintiff's motion for certification as a class action.[2] Federal Rule of Civil Procedure 23 sets forth a two-part test for certifying a class action. First, the plaintiff must show four prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representative parties are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If each of these prerequisites is met, then the putative class must show that it fits into one of three categories specified in the Rule. Fed.R.Civ.P. 23(b). Unless each prerequisite is met, a determination under Rule 23(b) is unnecessary. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 n. 3 (4th Cir.1998). The burden of establishing the right to certification rests with the proponents thereof. *Stastny v. Southern Bell Tel. & Tel. Co.,* 628 F.2d 267 (4th Cir.1980).

The undersigned cannot find, based on the Plaintiff's past conduct, that he is an adequate representative of the putative class. In his motion for class certification, Plaintiff's counsel states that Plaintiff "is the same Plaintiff who successfully brought a prior, similar action against a different defendant in *Goetsch v. Household Finance,* 1:98cv39. Mr. Goetsch's primary motivation is consumer advocacy." Plaintiff's Motion and Brief for Class Certification, at 5. In that action, Plaintiff sued individually and on behalf of all others similarly situated. However, no motion for class certification was made and the Magistrate Judge ultimately set a deadline for the motion. That deadline was subsequently extended. However, no such motion was ever filed because Plaintiff reached a settlement agreement with the Defendant. In this case as well, although Plaintiff sued as a class representative, he did not move for class certification until the Court ordered him to clarify whether he intended to pursue the same. This pattern of behavior certainly belies Plaintiff's statement that his primary interest is consumer advocacy. Indeed, it may be that, like others, Plaintiff earns a good living by bringing these suits under the threat of a class action, leverage which is then used to attain a settlement. "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard,* 155 F.3d at 338. Where the class representative's zeal may be tempered by his own financial prospects, he is not an adequate representative. *Id.* Plaintiff's failure to zealously pursue a class action in his prior case weighs heavily against his lofty claim of "consumer advocacy" in this one. Moreover, the various causes of action alleged do not present common issues of law and fact. *Id.*

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the motion of Defendant Associates National Bank to stay this action and to compel arbitration is hereby **GRANTED,** and this matter is hereby **STAYED** pending arbitration of the issues herein.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for class certification is hereby **DENIED;** and

---

2. Since the Court is without discretion to do anything other than order arbitration, it is technically without jurisdiction to address this motion. It is thus being addressed alternatively.

**580**

IT IS FURTHER ORDERED that all other pending motions are hereby **DENIED** as moot.

The Court directs the parties to submit a status report of the arbitration proceedings by the 15th of each month until such proceedings are concluded.

The Plaintiff is notified that there is no right of direct appeal from an Order compelling arbitration.