**K.N. BHATIA, M.D., Plaintiff-Appellant,**

v.

**S. Erik JOHNSTON, et al., Defendants-Appellees.**

No. 86-1634.

United States Court of Appeals, Fifth Circuit.

June 4, 1987.

---

William D. Kuhlmann, Hershel R. Payne, Bishop, Payne, Lamsens & Brown, Fort Worth, Tex., for plaintiff-appellant.

Michael J. Stewart, Janie L. Frank, Shannon, Gracey, Ratliff & Miller, Fort Worth, Tex., for defendants-appellees.

Before THORNBERRY, REAVLEY, and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

This appeal poses the sole inquiry whether the district court properly ordered the arbitration of the state law claims advanced by K.N. Bhatia in his dispute with defendants-appellees. Agreeing with that order, we affirm.

### Background

In December 1980, Bhatia opened two margin accounts, one individually and one as trustee, with Rotan Mosle, Inc., a brokerage firm. S. Erik Johnston, a co-defendant, was Bhatia's accountant and investment advisor as well as the Rotan Mosle broker-in-charge of the two accounts. For each account, Bhatia signed a Margin Agreement prepared by Rotan Mosle. Each agreement contained a provision for optional arbitration of disputes.[1]

Eighteen months later, Johnston became a broker with Dean Witter Reynolds, Inc. Bhatia transferred his accounts and opened a third with Dean Witter. In doing so,

---

1. The Rotan Mosle Margin Agreement contained the following provision:

Any controversy between Rotan Mosle, Inc. and the customer arising out of or relating to this agreement or breach thereof, can be settled by arbitration in accordance with the established rules for the securities industry. **Please be advised that you have the option to pursue recovery of claims arising out of any controversy through other legal means if you should deem it necessary.**

Bhatia executed three Customer's Agreements prepared by Dean Witter. Johnston represented that those agreements were the same as the Rotan Mosle agreements. Bhatia did not read the new agreements, either before or after signing them. If he had, he would have seen that the arbitration clause in the Dean Witter agreements was mandatory,[2] and that several other provisions significantly differed.[3]

In 1982 and 1983 Bhatia's accounts lost money. In January 1984 he filed suit against Johnston, John Turbeville, another Dean Witter employee, and Dean Witter, invoking the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b–6, 80b–15, and various state and common-law causes of action. The defendants sought arbitration of all non-federal causes of action and a concomitant stay pending that arbitration. In August 1984, applying then-controlling circuit precedent, *see, e.g.,* *Miley v. Oppenheimer & Co.,* 637 F.2d 318 (5th Cir.1981), the district court denied the motion, finding that the arbitrable and non-arbitrable claims arose out of the same transaction and were so intertwined as to warrant the denial of arbitration and trial of all claims in federal court.

In March of 1985, the United States Supreme Court rendered its decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), expressly disapproving this circuit's doctrine of intertwining, and held that where a valid arbitration agreement exists, a district court must compel arbitration despite intertwining with non-arbitrable claims.

The defendants renewed their motion for arbitration of the pendent claims, and also sought arbitration of the claims under the Exchange Act. The district court followed the teachings of *Byrd* and ordered arbitration of the pendent state claims, but, citing *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 785 F.2d 1274 (5th Cir.1986), declined to compel arbitration of the claims made pursuant to the Exchange Act.

■ In ordering arbitration of the pendent claims, the district court found that in the affidavits filed in opposition to the motion for arbitration, Bhatia did not contend that the arbitration clause was induced by fraud. Bhatia did not read the agreements and was unaware of the arbitration clause until advised by his attorney after the instant suit was filed. Noting that Texas law charges a party with reading that which he signs, *Plains Cotton Cooperative Association v. Wolf,* 553 S.W.2d 800 (Tex. Civ.App.1977, writ ref'd n.r.e.), the district court concluded that absent a showing of fraud, Bhatia could not resist enforcement of the arbitration clause. Bhatia appeals the arbitration and stay order. We have appellate jurisdiction of an order staying an action pending arbitration. 28 U.S.C. § 1292(a)(1); *Commerce Park at DFW Freeport v. Mardian Construction Co.,* 729 F.2d 334 (5th Cir.1984).

### Analysis

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, governs arbitration agreements made in contracts involving commerce.

---

2. The arbitration clause in the Dean Witter Customer's Agreement provided:

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election

in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

3. In addition to the differences in the arbitration provisions, there were differences in the clauses setting forth the choice of law, agreement modification procedures, interest computation, effect of government regulations, breach of customer's promise to sell securities, receipts of reports of execution of orders, and the legal relationship between the parties.

Under § 2 of the Act, a written provision in a contract

> to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 of the Act permits the court to stay proceedings pending arbitration if the court is "satisfied that the issue involved ... is referable to arbitration" under an arbitration agreement. Under § 4 if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court "being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," shall direct the parties to arbitrate. Further, § 4 declares that "[i]f the making of the arbitration agreement or the failure ... to perform the same be in issue, the court shall proceed summarily to the trial thereof."

■ The Arbitration Act clearly established a federal policy in favor of arbitration, and sought to ameliorate perceived judicial hostility to arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds, Inc. v. Byrd.* By its express terms the Arbitration Act dispels any suggestion that the district courts are vested with discretion to order arbitration for it "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd,* 470 U.S. at 218, 105 S.Ct. at 1241, 84 L.Ed.2d at 163 (emphasis in original).

The court must first determine whether the parties agreed to arbitrate the dispute. *Mitsubishi.* To do so, the court must look to the body of federal arbitration law. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), requires that the question of arbitrability be addressed with a "healthy regard for the federal policy favoring arbitration," with

doubts regarding the scope of the agreement resolved in favor of arbitration. 460 U.S. at 24–25, 103 S.Ct. at 941, 74 L.Ed.2d at 785. At the same time, the court should remain keenly attuned to well-grounded claims that "the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Id.* (*quoting* 9 U.S.C. § 2).

Bhatia's contentions inform our resolution of this appeal. If he is contending that Johnston's alleged misrepresentations fraudulently induced him to enter into the contracts with Dean Witter, that issue is arbitrable. If he is claiming, on the other hand, that the fraudulent inducement focused specifically on the arbitration provision, the court may first address the issue. In this regard, the Supreme Court's holding in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270, 1277 (1967), is the dispositive ruling. Therein the Court declared:

> [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

In accordance with the specific teachings of *Prima Paint,* we must determine whether Bhatia's complaint is directed at the entire contract or only the arbitration clause.

■ The record reflects that Bhatia charged that the misrepresentations tainted his actions with respect to the entire contract and not just the arbitration clause. This appears from his affidavits, the treatment he accorded the execution of the instruments, and the memorandum filed herein. Bhatia filed two affidavits in opposition to the motion for arbitration. In the first affidavit he contended that the agreements were not explained to him and that he had no bargaining opportunity as to

their contents.[4] That affidavit was offered in support of Bhatia's argument that the Dean Witter contracts were invalid as contracts of adhesion. In the brief in opposition to the arbitration motion, Bhatia contended that "the mandates of the arbitration clause should be avoided because the Customer Agreement between Plaintiff and Defendants is a contract of adhesion." In the second affidavit, Bhatia again referred to the execution of the Dean Witter Customer Agreements in general terms.[5] The second affidavit was filed after Dean Witter had underscored for the district court that Bhatia had not raised any allegation of fraud in regard to the execution of the customer agreement as a whole, or the arbitration clause in particular. The second affidavit repeated references to Johnston's alleged misrepresentations as they related to the entirety of the Customer Agreement.

■ As previously noted, in addition to the difference in the Arbitration Agreement there were significant differences in other provisions. We are persuaded that Bhatia did not assert that the arbitration clause alone, as opposed to the Customer Agreement generally, was induced by the misrepresentations and actions of Johnston. Accordingly, the Supreme Court's holding in *Prima Paint* dictates that Bhatia's claim that the contract is invalid must be referred to arbitration. In addition, we are not convinced that Bhatia has made a sufficient showing to entitle him to a trial by a jury under the Arbitration Act. *See T & R Enterprises v. Continental Grain Co.*, 613 F.2d 1272 (5th Cir.1980). As the party resisting arbitration, Bhatia has the burden of showing that he is entitled to a jury trial under § 4 of the Arbitration Act. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391 (5th Cir., Unit B, 1981).

For the foregoing reasons, we conclude that the district court properly ordered arbitration, and stayed trial on the pendent state law claims pending arbitration, and its judgment is AFFIRMED.

THORNBERRY, Circuit Judge, concurring specially:

I have no problem with the result reached by the majority, but I am troubled by the route taken to reach it.

I would hold that Bhatia loses because he did not allege reliance on Johnston's misrepresentations and thus cannot prove fraud of any kind. Bhatia does not lose because he alleged fraud in the inducement of the contract rather than fraud in the inducement of the arbitration clause. Because Bhatia cannot prove fraud at all, it seems to me that the majority's reliance on *Prima Paint* as it does is only confusing.

---

4. Bhatia's first affidavit stated in pertinent part:

   I signed these Agreements according to the instructions given by Erik Johnston, and I signed where he indicated that I should. Mr. Johnston did not explain *any* of the fine print clauses contained in the Customer's Agreements. Particularly, he did not explain the significance of paragraph 16, the arbitration clause.... The Customer's Agreements were printed and prepared by Dean Witter. I did not negotiate their contents nor did I discuss those contents with either Erik Johnston or any other representative of Dean Witter. I was never given any indication that I could delete or modify paragraph 16 or any other clause in the Agreements ... I was not aware of the existence of paragraph 16 until after I brought this lawsuit.... (Emphasis added.)

5. Bhatia's second affidavit states in part:

   On or about July 21, 1982, Mr. Johnston brought over a stack of papers for me to sign, which he on occasion did. Among those papers were the Customer's Agreements with Dean Witter. He pointed them out and instructed me to sign them, telling me that they were the same as the Customer's Agreements I had signed at Rotan Mosle....

   At no time did Mr. Johnston inform me that the Arbitration Clause in the Dean Witter Agreements was in any way different from the Arbitration Clause in the Rotan Mosle Agreements. At no time did Mr. Johnston inform me that my legal rights under Dean Witter Agreements were in any way different than my rights had been under the Rotan Mosle Agreements.