**BENEFICIAL NATIONAL BANK, U.S.A. and Household Bank (SB), N.A., Plaintiffs,**

v.

**Obie PAYTON, Defendant.**

**No. CIV.A. 401CV85LN.**

United States District Court, S.D. Mississippi, Eastern Division.

Aug. 23, 2001.

Fred Krutz, III, Daniel J. Mulholland, David H. Fulcher, Forman, Perry, Watkins, Krutz & Tardy, Jackson, MS, for plaintiffs.

Robert Gordon Methvin, Jr., Robert G. Methvin, Jr., P.C., Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

Two motions are currently pending in this court for decision. Defendant Obie Payton has moved to dismiss the case for lack of subject matter jurisdiction, and plaintiffs Beneficial National Bank, U.S.A. (Beneficial) and Household Bank (SB), N.A. (Household) have moved to compel arbitration pursuant to § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. Having considered these motions, together with the parties' responses and accompanying memoranda of authorities and attachments, the court first concludes, for reasons which follow, that there is, in fact, diversity jurisdiction under 28 U.S.C. § 1332 so that defendant's motion to dismiss is due to be denied. The court further concludes that plaintiffs' motion to compel arbitration is well taken and should be granted.

In April 1995, the defendant purchased a home satellite system which he financed through a revolving credit card account with Beneficial. That account was later assigned to Household. In February 2001, Payton filed suit against Beneficial and Household in the Circuit Court of Kemper County, Mississippi alleging that his participation in this transaction was induced by fraudulent misrepresentations and other wrongful conduct on the part of Household and its agents. Shortly after Payton filed suit, Household and Beneficial brought this action in federal court to compel arbitration in accordance with § 4 of the FAA,[1] contending that the claims asserted against them by Payton in the state court action are governed by an arbitration agreement that is a part of Payton's cardholder agreement.[2]

Although this court previously denied a motion by Payton to dismiss for

1. Under § 4 of the FAA, "if a party to an agreement refuses to arbitrate, the opposing party may bring an action to compel arbitration, and after hearing the parties the court 'being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue,' shall direct the parties to arbitrate." *Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987) (quoting 9 U.S.C. § 4); 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which [would have subject matter jurisdiction under Title 28] for an order directing that such arbitration proceed in the manner provided for in such agreement.").

2. The court notes that in response to Payton's state court complaint, plaintiffs herein filed in the state court a motion to dismiss or, alternatively, to stay pending arbitration. And in response to the complaint to compel arbitration filed in this court, Payton moved this court to dismiss or stay pending resolution of the state court proceedings. By order dated June 28, the state court entered an order staying that action pending the resolution of this case, and on June 29, this court entered its order denying defendant's motion to dismiss or, alternatively, to stay.

lack of subject matter jurisdiction upon finding that the diverse citizenship of the parties and Payton's demand in his state court complaint for over $10,000,000 gave rise to jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, Payton has recently filed a second motion to dismiss for lack of subject matter jurisdiction.[3] In this motion, Payton argues that the court no longer has jurisdiction since he has moved in state court for leave to amend his complaint in order to expressly limit his damages demand to less than $75,000, the requisite amount in controversy for diversity jurisdiction. However, the rule is well established, both in removed actions and actions originally brought in federal court, that "the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253–54 (5th Cir.1998) (citing *St Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). *See also Gebbia v. Wal–Mart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir.2000) ("[O]nce the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction."); *Seafoam, Inc. v. Barrier Sys., Inc.,* 830 F.2d 62, 66 (5th Cir.1987) ("It is well established law that the jurisdiction of a federal court sitting in diversity is determined as of the time of filing of the complaint. Subsequent events ... will not serve to deprive the court of jurisdiction.... If a statute of limitations reduces

the amount claimed to an amount lower than the jurisdictional minimum, the district court still has jurisdiction to adjudicate the rest of the claim.").[4] This court undeniably had diversity jurisdiction at the time this suit was filed and accordingly, defendant's motion to dismiss will be denied. That brings the court to plaintiffs' motion to compel arbitration.

To fully appreciate the parties' arguments, it is important to first understand the factual setting underlying plaintiffs' contention that Payton's agreement includes a provision for mandatory arbitration and Payton's contention that it does not.

Payton's signature on the credit application with Beneficial appears directly below the following statement:

> You acknowledge that you have received and read a copy of the BNB USA Cardholder Agreement attached hereto and made a part of this Application (including the instructions in the Account Information paragraph) and understand and agree to its terms and conditions....

The accompanying "Cardholder Agreement and Disclosure Statement" recites, in relevant part, as follows:

NOTICE TO CARDHOLDER:

> Do not use your Cardholder Account ("the Account") before you read this Agreement. You are entitled to an exact copy of this Agreement. Keep it to protect your legal rights. You have the right to pay amounts owed under your

---

**3.** As the court recognized in its prior opinion in this case, the FAA does not confer subject matter jurisdiction on a district court and instead, an action brought pursuant to the FAA must assert an independent basis for subject matter jurisdiction, such as diversity of the parties or the presentation of a federal

question. *See Bank One v. Coates,* 125 F.Supp.2d 819, 821 (S.D.Miss.2001).

**4.** There is no merit to defendant's assertion that this rule applies only to removed cases and not to actions which are commenced in federal court.

Account in full or in part at any time without penalty.

Agreement: You have applied for an Account with us. The Account can only be used to obtain advances to purchase goods and services ("Purchase Advances") from participating merchants and to which merchants we will advance funds for such purchases. You will be required to sign a Sales Slip or other written authorization for such purchases. By applying for an Account or signing the Application or using this Account, you agree to the terms and conditions contained in this Agreement and the terms and conditions contained in the Application, which you and we agree is a part of this Agreement.

. . .

Change in Terms: We may change the terms of this Agreement with respect to both existing balances and future purchases. To the extent required by law, we will mail you written notice of any change at least 30 days prior to its effective date. The change will then occur automatically on its effective date. If the change will increase your periodic interest or interest charges, the change will occur on its effective date, unless you notify us in writing within that 30 day period, that you do not accept the change. If you so notify us, we will allow you to pay off your remaining balance under current terms, however we may close your Account to further charges. At our option, we may choose to make any change effective only if you

use your Account on or after a specified date.

. . .

Applicable Law: This Agreement is governed by the law of the State of Delaware and applicable federal laws.

In 1996, the year after Payton applied for and was approved for the Beneficial account, Beneficial sent a notice to all its cardholders, including Payton, advising that changes were being made to the Cardholder Agreement, and specifically, that a provision for mandatory arbitration was to become a part of the agreement unless the cardholder rejected the change.[5] The notice stated as follows:

### NOTICE TO CARDHOLDERS

This will notify you that changes are being made to your Cardholder Agreement and Disclosure Statement ("Agreement") for your private label credit card account with Beneficial National Bank USA.

Effective in thirty days, the following section will be added to your agreement:

**Arbitration**: Any claim, dispute or controversy (whether in contract, tort or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum

5. In support of their motion, plaintiffs have submitted the affidavit of Christie McVey, an individual professing personal knowledge of the facts as to which her affidavit is addressed, and professing familiarity with the operations of Beneficial and Household Bank, including the administration of private label credit card accounts. McVey states in her affidavit, *inter alia,* that after Payton's account was opened, "Beneficial sent a change in terms notice to its cardholders, including Payton. . . ." Attached to McVey's affidavit is a copy of the notice she states was sent to Beneficial cardholders. Although Payton has moved to strike McVey's affidavit, the court concludes that his objections to the affidavit are not well taken and that his motion to strike should therefore be denied.

in effect at the time the Claim is filed. Any such election may be made at any time, regardless of whether a law suit has been filed or not, unless such a law suit him resulted in a judgment. Rules and forms of the National Arbitration Forum may be obtained by calling (800) 474–2371 and all Claims shall be filed at any National Arbitration Forum office or at Post Office Box 50191, Minneapolis, Minnesota 55404. Any participatory arbitration hearing that you attend will take place in the federal judicial district of your residence. At your request, we will advance the filing and hearing fees for any Claim which you may file against us. The arbitrator will decide whether we or you will ultimately be responsible for paying these fees.

This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16. The arbitrator shall apply relevant law and provide written, reasoned findings of fact and conclusions of law. Judgment upon the award may be entered in any court having jurisdiction.

. . . . .

Notwithstanding the foregoing, you have the option to notify us before the aforesaid 30 day period has elapsed that you do not agree to accept these changes by writing to us at BNB USA, P.O. Box 15521, Wilmington, Delaware 198–50–

5521, whereupon you shall have the right to continue to pay off the credit card account in the same manner and under the same terms and conditions as now in effect. In the absence of your giving us such notice, you will be deemed to consent to the changes.

It is undisputed that Payton did not notify Beneficial within the thirty-day period that he did not agree to accept these changes, and thus according to plaintiffs, the changes became effective November 8, 1996.

About a year-and-a-half later, in May 1999, Payton's account with Beneficial was assigned to Household Bank. Cardholders were notified of the assignment by a billing statement insert. The insert, which was entitled "Important Changes to Your Agreement and Disclosure Statement," stated, "Effective on the first of your billing cycle beginning on or after June 11, 1999, all the remaining terms of the new Agreement with Household Bank (SA), N.A. following this notice will apply to your credit card account...." Cardholders were further advised to "**PLEASE READ YOUR ENTIRE NEW AGREEMENT AND KEEP IT FOR FUTURE REFERENCE WITH YOUR OTHER IMPORTANT PAPERS**." The accompanying "CARDHOLDER AGREEMENT AND DISCLOSURE STATEMENT" included a provision for arbitration substantially like that set forth in Beneficial's 1996 notice of changes.[6]

6. The agreement recited:

**ARBITRATION**: Any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause or any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Code of Procedure of the National Arbitration Forum in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be requested by writing to, and all claims shall be filed at, any National Arbitration Forum office.... This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1–16. Each party shall bear the

Plaintiffs maintain that the arbitration provision added in 1996 to the original Beneficial Cardholder Agreement was and is valid and enforceable inasmuch as Payton agreed to the original cardholder agreement which authorized Beneficial to change the terms of the agreement upon giving any notice required by law. They submit further that because Payton continued to maintain his account after it was transferred to Household and after being apprized of the terms of Household's Cardholder Agreement, he thereby became bound by the arbitration provision contained in the Household Cardholder Agreement.

In his response to plaintiffs' motion to compel arbitration, Payton insists that he never agreed to arbitrate any disputes with plaintiffs, as the original agreement did not grant Beneficial the right to add altogether new terms to the parties' exist-

ing agreement, and since he never affirmatively accepted the terms of either the Beneficial Amended Cardholder Agreement or took any of the steps required to bind him to the terms of the Household Cardholder Agreement. Further, he argues that even if the court were to conclude that one or the other arbitration provision became a part of his contract, any such agreement cannot be applied retroactively to cover his current complaint against plaintiffs which is based on alleged wrongs which predated any such agreement. Finally, Payton takes the position that the putative arbitration agreement(s) are substantively unconscionable and hence unenforceable since the National Arbitration Forum has a demonstrable bias in favor of lenders and against consumers. The court considers the arguments in turn.[7]

expense of their respective attorney's fees regardless of which party prevails. The arbitrator shall apply relevant law and provide written reasoned finding of fact and conclusions of law. The parties agree that the award shall be kept confidential. Judgment upon the award may be entered in any court having jurisdiction. Class actions are not permitted unless the parties agree otherwise. THE PARTIES ACKNOWLEDGE THAT THEY HAD A RIGHT TO LITIGATE CLAIMS THROUGH A COURT, BUT THAT THEY AGREE TO HAVE AN ELECTION TO RESOLVE ANY CLAIMS THROUGH ARBITRATION, AND THAT THEY HEREBY WAIVE THEIR RIGHTS TO LITIGATE CLAIMS IN A COURT UPON ELECTION OF ARBITRATION BY EITHER PARTY.

7. In *Bank One v. Coates*, 125 F.Supp.2d 819 (S.D.Miss.2001), this court summarized the principles applicable to requests to compel arbitration under the FAA, stating as follows:
The Fifth Circuit has explained that [i]n adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determina-

tion involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.... The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."
*Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996) (citations omitted).
When deciding the broader issue of whether the parties agreed to arbitrate the dispute in question, "the court must look to the body of federal arbitration law," *Bhatia*, 818 F.2d at 421, which recognizes that "the question of arbitrability [is to] be addressed with a 'healthy regard for the federal policy favoring arbitration,' with doubts regarding the scope of the agreement resolved in favor of arbitration," *id.* (quoting *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941). As to the more specific issue of whether there is a valid agreement to arbitrate, "'courts generally ... should apply ordinary state-law principles that govern the formation of contracts'", *Webb*, 89 F.3d at 257 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)), but in doing

Defendant agrees that in 1995, he purchased a satellite system for which he completed and signed a credit application to obtain financing from Beneficial; and he acknowledges that he assented to the terms of the original Beneficial Cardholder Agreement which, he notes, did not contain any arbitration provision. It did include a "change of terms" provision, as defendant concedes; but he insists that the "change of terms" provision only authorized Beneficial to *change* existing terms of the agreement and did not give Beneficial the right to *add* altogether new terms.

In *Bank One v. Coates*, 125 F.Supp.2d 819 (S.D.Miss.2001), this court considered whether an arbitration provision could be added to an existing agreement pursuant to a provision in the parties' original agreement authorizing the lender to "change or amend the terms" of the agreement upon notification to the borrower defendant. *Id.* at 831. The defendant argued that despite this provision, he could not have anticipated that the lender could amend the agreement to add an arbitration agreement, since the original agreement contained no mention of arbitration and the "amendment" provision referenced only changes to payments, charges, fees and the interest rate. *Id.* The court rejected the defendant's argument because "[t]he agreement . . . stated simply, unambiguously and without limitation, that [the lender] could 'change or amend the terms of th[e] Agreement.'" *Id.* The court stated,

> Given . . . that the original cardholder agreement permitted amendments, the arbitration provision is not rendered unenforceable simply by virtue of the fact that Bank One undertook to add the arbitration provision via amendment. Consistent with the terms of the original agreement, Bank One could validly amend its agreement to add an arbitration clause, just as it could have amended the agreement to add or change any other term on the agreement. *See, e.g., Samuels v. Old Kent Bank*, No. 96 C 6667, 1997 WL 458434 (N.D.Ill. Aug.1, 1997) (canceling Card Miles bonus program).[8]

so, must give "due regard . . . to the federal policy favoring arbitration," *id.* (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989)); *McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 984 (5th Cir.1995) ("[I]n construing an arbitration agreement within the scope of the FAA, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability'".) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
*Coates*, 125 F.Supp.2d at 827.

8. *See also Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 921 (N.D.Tex.2000) (enforcing arbitration agreement added by way of amendment to credit card agreement); *Herrington v. Union Planters Bank N.A.*, 113 F.Supp.2d 1026, 1031 (S.D.Miss.2000) (enforcing arbitration agreement added to account agreement via amendment); *Stiles v. Home Cable Concepts, Inc.*, 994 F.Supp. 1410, 1419 (M.D.Ala.1998) (enforcing arbitration provision added to a credit card agreement via amendment where original agreement provided that it was subject to change, the plaintiff acknowledged that he had received notice of the amendment and he agreed that he had failed to return the postage-paid card provided by the company for customers who chose to reject the arbitration provision); *cf. Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C.2000) (enforcing amendments to credit card agreement which first added and then modified the added arbitration agreement where original agreement provided for amendment by notice to cardholder); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997) (arbitration clause which was included with product (computer) mailed to customer with a proviso that the customer could return the product within 30 days was

Defendant submits that *Coates* is distinguishable since the provision in the original agreement in *Coates* authorized the lender to "change or amend" the terms of the parties' agreement whereas the agreement at issue here allowed Beneficial only to "change" the terms of the agreement. In the court's opinion, however, there is no practical distinction between a "change" and an "amendment" to the terms of the agreement.[9] The agreement authorized Beneficial to "change the terms of the agreement," which Beneficial did by mailing to its cardholders, including Payton, a notice of the change in terms which included an arbitration provision. The notice to Payton specifically informed him that he had the right to reject the arbitration provision, and yet the record reflects that he did not avail himself of that right.

■ Payton next argues, though, that irrespective of the terms of the "Notice to Cardholders" which clearly required customers to affirmatively reject the arbitration agreement if they did not wish it to become a part of their contracts with Beneficial, his failing to take affirmative steps to opt out of the arbitration provision is immaterial since a valid and binding arbitration agreement may not be predicated on nothing more than his failure to reject the arbitration provision. For this proposition, defendant relies on *Long v. Fidelity Water Systems, Inc.*, No. C–97–20118RMW, 2000 WL 989914 (N.D.Cal. 2000), in which the court suggested that acceptance of an arbitration agreement may not be found based merely on a party's failure to reject such an agreement. In *Coates*, however, this court considered the California court's opinion in *Long*, and found it unpersuasive. *See Coates*, 125 F.Supp.2d at 833 n. 12. For the reasons assigned in *Coates*, the court remains un-

binding on customer who did not return the computer).

9. In *Herrington v. Union Planters Bank N.A.*, 113 F.Supp.2d 1026 (S.D.Miss.2000), the court addressed a similar argument by a party who sought to avoid arbitration by arguing that because the parties' original agreement did not authorize the bank to "amend" the parties' existing agreement but rather allowed it only to "revise" the agreement, then the agreement did not authorize the bank to add an arbitration provision. The court rejected this contention because in its view, the terms were essentially interchangeable. *Id.* The court stated, "Amend simply means '[t]o change, correct, revise,' while revise is defined as '[t]o go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it.'" *Id.* at 1031 (quoting Black's Law Dictionary). The court concluded that "[r]egardless, ... sufficient notification to the plaintiffs of the revisions effectively amended the terms and conditions of the plaintiffs' deposit agreements as contemplated when the plaintiffs initially opened their accounts and agreed to such amendments." *Id.*

Similarly, Black's Law Dictionary (6th ed.) defines "change" to include "[a]n alteration; a modification or addition; substitution of one thing for another."

Defendant relies on *Badie v. Bank of America*, 67 Cal.App.4th 779, 797–98, 79 Cal. Rptr.2d 273, 285 (1998), in support of his insistence that there is a distinction between "amend" and "change," with the former term encompassing additions and the latter not. This court is obviously not bound by *Badie*. But it is noted that in *Badie*, the court did not actually base its conclusion that the bank could not add an arbitration provision on the notion that the term "change" does not cover "additions," but rather based its conclusion on its finding that the parties did not intend or contemplate that a provision which authorized the lender to "change any term, condition, service or feature" of the account would allow the lender to unilaterally add an arbitration clause by sending a "bill stuffer." *Id.* (stating that whether the addition was permissible "depend[ed] principally on what the parties intended by the word 'terms,' not on whether the word 'change' also means 'add,' or on whether the Bank used the word 'add' in the change of terms provision."). Moreover, as observed in *Coates*, in *Badie*, unlike here, the consumer was not given the option of rejecting the arbitration provision.

persuaded, and thus concludes that the arbitration provision contained in Beneficial's 1996 Notice to Cardholders became part of Payton's contract with Beneficial.[10]

■ Defendant next maintains that even if the arbitration provision became a part of his contract, his claims against plaintiffs do not fall within the scope of the arbitration provision since they relate to allegedly wrongful acts that were committed prior to the purported effective date of the arbitration agreement. He argues, in other words, that the arbitration provision may not be applied retroactively to events which predated the alleged arbitration agreement. Based on the following, the court must disagree.

■ As numerous courts have recognized,

> if [an] arbitration clause contains retroactive time-specific language, e.g., a phrase reading "this agreement applies to all transactions occurring before or after this agreement," then [the court] may apply the arbitration provision to events relating to past events.[11] Or, if

**10.** Because the court concludes that the Beneficial arbitration provision became part of Payton's contract, the court perceives no need to resolve whether Payton ever became subject to the arbitration provision set forth in Household's Cardholder Agreement. The Household Cardholder Agreement provided to Payton at the time of the assignment of his account recited:

> ACCEPTANCE OF AGREEMENT: By a) signing, using, or permitting others to use the Card, b) signing or permitting others to sign sales slips, or c) making or permitting others to make telephone purchases, you agree to the terms and conditions of this Cardholder Agreement and Disclosure Statement, which includes an arbitration provision.

Payton points out that he never signed, used or permitted others to use any credit card, signed or permitted others to sign sales slips or made or permitted others to make telephone purchases using the card, and that he therefore never performed any of the necessary conditions required to accept the Household Cardholder Agreement. He concludes that "[w]ithout showing Defendant's acceptance to the terms, a valid agreement to arbitrate cannot exist."

Plaintiffs argue in response that because the original cardholder agreement with Beneficial authorized Beneficial to change the terms of the agreement by providing 30 days' notice, and because along with the notice of assignment, defendant was provided with 30 days's notice of the "changes" that would take effect upon the transfer of defendant's account to Household, then the "changes" simply took effect without any affirmative acts by Payton.

Plaintiffs submit, then, that "by not cancelling the account and by continuing to utilize the account, Payton became bound" by the terms of the Household Cardholder Agreement.

The court has considered the parties' arguments on this issue and it strikes the court that in this case, since the court has concluded that an arbitration provision had already become a part of Payton's contract with Beneficial at the time his account was assigned to Household, then for purposes of determining whether Payton is bound to arbitrate his claim against plaintiffs, it ultimately matters not whether upon assignment to Household, his account became governed by the terms of the Household Cardholder Agreement or whether, instead, he remained subject to the terms of the Beneficial Cardholder Agreement, as modified by the arbitration provision since the salient terms of the arbitration provisions in these agreements are substantially the same; consequently, a determination of which contract governs resolution of the arbitrability issue would have little if any bearing on the issue before the court, i.e., arbitrability.

**11.** For examples of such cases, *see Citifinancial, Inc. v. Smith*, No. 3:01CV260LN (S.D. Miss. June 15, 2001); *First Family Financial Servs., Inc. v. Rogers*, 736 So.2d 553, 557–58 (Ala.1999) (compelling arbitration of dispute relating to conduct that pre-dated arbitration agreement where the agreement expressly recited that it applied to "all claims and disputes between you and us ... includ[ing], without limitation, all claims and disputes arising out of, in connection with, or relating to ... *your loan from us today [and] *any

the arbitration clause contains language stating that it applies to "all transactions between us" or "all business with us," then [the court] may apply the arbitration clause retroactively.

*Kenworth of Dothan v. Bruner–Wells Trucking, Inc.*, 745 So.2d 271, 275 (Ala. 1999). In the case at bar, while the Beneficial arbitration provision contains no "retroactive time-specific language," in the court's opinion, it is sufficiently broad to cover the dispute between the parties in the state court action, particularly considering that ambiguity as to the availability of arbitration is to be resolved in favor of arbitration,[12].

In *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir.1982), *overruled on other grounds by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the parties' arbitration agreement recited that "any controversy between us arising out of your business or this agreement, shall be submitted to arbitration." *Id.* at 1026 n. 4. The court rejected the plaintiff's argument "that because certain acts complained of occurred prior to execution of the arbitration agreement those claims [were] not properly disposed of by submission to an arbitrator," *id.* at 1028, stating,

> By its own terms the contract between the parties covers not only disputes arising out of the agreement, but in the disjunctive includes "any controversy between us arising *out of your business.*" (emphasis supplied). An arbitration clause covering disputes arising out of the contract or business between the parties evinces a clear intent to cover more than just those matters set forth in the contract.

*Id.* The arbitration provision involved in *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 331–33 (10th Cir.1993), similarly read, "[A]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration." The Tenth Circuit held:

> In reviewing this language we are guided by the principle that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Bridgestone/Firestone, Inc.*, 4 F.3d at 921. In this light the arbitration agreement is clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement. *See Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir.

previous loan from us and any previous retail installment sales contract or loan assigned to us...."), and *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton*, 719 So.2d 201, 203 (Ala.1998) (arbitration agreement expressly extended to all controversies relating to the parties' transactions and agreements, "whether entered into prior [to], on, or subsequent to the date hereof" clearly indicated that disputes related to prior transactions were to be arbitrated); *cf. Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329, 1333 (Ct.App.Ind.1991) (arbitration agreement which covered "all ac-

counts which the undersigned may open or reopen" applied prospectively only).

12. *See PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462–63 (5th Cir.2001) (In determining whether a valid agreement to arbitrate between the parties exists, and whether the dispute in question falls within the scope of that arbitration agreement, the court "must bear in mind the strong federal policy favoring arbitration and resolve any ambiguity as to the availability of arbitration in favor of arbitration.").

1982) .... Plaintiff's contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs contrary to contract principles which govern arbitration agreements. *See Bridgestone/Firestone, Inc.,* 4 F.3d at 921; *Belke,* 693 F.2d at 1028.

*Id.* at 332. Likewise, in *Rand Bond of North America, Inc. v. Saul Stone & Co.,* 726 F.Supp. 684 (N.D.Ill.1989), the court held that "all-embracing language" in the parties' contract mandating arbitration of "[a]ny controversy or claim arising out of or relating to your accounts," "[spoke] in terms of relationships and not timing" and thus covered a dispute arising prior to the execution of the arbitration agreement. *Id.* at 687–88. The court explained,

> What is involved is a straightforward assertion of a controversy or claim concerning what—by Rand Bond's lights—is Rand Bond's account with Stone. That comes squarely within the unconditional scope of the Arbitration Agreement. Thus the parties must be remitted to the arbitration remedy they themselves have chosen, whatever the facts might disclose.... Under the Federal Arbitration Act (9 U.S.C. §§ 1–14) questions of arbitrability are for the court, with any doubts as to scope of arbitrability to be resolved in favor of arbitrability (*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

*Id. See also Mehler v. The Terminix Int'l Co.,* 205 F.3d 44, 49–50 (2d Cir.2000) ("classically broad" arbitration provision which provided for arbitration of "any controversy or claim between [the parties] arising out of or relating to" the parties' agreement justified "presumption of arbitrability" and thus encompassed claims based on conduct that predated arbitration agreement); *Spurlock v. Life Ins. Co. of Virginia,* No. Civ. A. 98–D–222–N, 2000 WL 1785300, at *8 (M.D.Ala.2000) (arbitration clause in agreement at issue extended beyond claims arising from the agreement to "[a]ny controversy arising out of or relating to [Spurlock's] accounts...." and thus applied to claims that predated agreement since, "where the agreement governs not only disputes arising out of the arbitration contract, but also disputes arising out of the business relationship between the parties, it matters not whether the plaintiff executes the agreement before or after the dispute arises. Such an arbitration 'speaks in terms of relationships and not timing.' ").

The arbitration provision in the Beneficial Cardholder Agreement, as amended, recites that it applies to "[a]ny claim, dispute or controversy (whether in contract, tort or otherwise) arising from or relating to this Agreement or the relationships which result from this Agreement." [13] This language is broad enough to cover the dispute at issue.

■ In a final attempt to avoid arbitration, Payton asserts that the arbitration provision at issue is substantively unconscionable because it designates the National Arbitration Forum (NAF) as the arbitral forum. However, as this court stated in *Coates,* "the rules governing the conduct of NAF arbitrations belie [Payton's] speculation that suspected bias by the NAF has any realistic potential for affecting decisions of arbitrators in NAF arbitrations." *Coates,* 125 F.Supp.2d at 835; *see also Hale v. First USA Bank, N.A.,* No. 00CIV5406JGK, 2001 WL 687371, *4 (S.D.N.Y.2001) (rejecting similar challenge, and observing that "numerous courts have found the NAF to be an adequate and fair arbitral forum and have upheld arbitration

---

**13.** As set forth in the notice, the reference in the arbitration provision to "this Agreement" is a reference to Payton's original Cardholder Agreement and Disclosure Statement.

provisions requiring arbitration in the NAF'"). Defendant may not avoid arbitration on this basis.

For all of the foregoing reasons, the court concludes that plaintiffs' motion to compel arbitration should be granted.[14] The court further concludes that plaintiffs' request that the court stay litigation pending binding arbitration in accordance with the terms of the arbitration provision should likewise be granted.

Accordingly, it is ordered that defendant's motion to dismiss is denied, and it is further ordered that plaintiffs' motion for an order compelling arbitration pursuant to § 4 of the FAA and their accompanying request pursuant to § 3 of the FAA for an order staying litigation by defendant against them pending binding arbitration are granted.

---

14. In coming to its conclusion in this case, the court is not unmindful of the fact that several state trial courts in Alabama and Mississippi have reached a contrary result. However, a number of the orders entered by these courts seem to suggest that there was no evidence of the cardholder's having signed *any* agreement of any kind.   In other cases where there has been a signed agreement, the courts have not set forth the legal analysis by which they arrived at their conclusions. These courts' rulings are not binding on this court, in any event.