CARLTON, J.,
for the Court:
¶ 1. Janelle Pritchard, the Robert A. Pritchard Marital Trust (“Marital Trust”), and Hickory Street LLC (collectively “Plaintiffs”) filed suit against Wells Fargo Advisors LLC (“Wells Fargo”), as the successor in interest of Wachovia Securities and A.G. Edwards Inc. and Jon Reynolds, in the Circuit Court of Jackson County. Plaintiffs alleged that Wells Fargo and one of its financial advisors, Reynolds, negligently managed and converted assets in accounts belonging to Janelle, her de *793 ceased husband, Robert A. Pritchard, and Robert’s trust accounts.
¶2. In response, Wells Fargo filed a motion to compel arbitration and for a stay pending arbitration. In its motion, Wells Fargo indicated that all of the claims asserted in Plaintiffs’ action are subject to an arbitration clause in a client agreement. Wells Fargo specifically cited the client agreement for the Marital Trust account. Reynolds joined Wells Fargo’s motion to compel arbitration.
¶ 3. Following several hearings, the trial court ultimately denied Wells Fargo’s motion to compel arbitration on the grounds that the incidents giving rise to the complaint arose before the arbitration agreement for the Marital Trust was signed and also because the arbitration agreement contained “contradictory and inconsistent statements that negatefd]” it. The record reflects that Plaintiffs allegedly acted negligently in managing the accounts at issue and wrongfully converted the funds of these accounts as early as 2006 and before the mandatory arbitration agreement was executed for one of the accounts. Even though the arbitration agreement contained language rendering the agreement applicable to controversies occurring before the execution of the agreements, the trial court found the retroactive application unenforceable.
¶ 4. Wells Fargo appeals and argues that the trial court erred in refusing to enforce the arbitration agreements set forth in Plaintiffs’ various securities-brokerage-account agreements. This Court agrees, and we reverse and remand this case to the trial court for further proceedings consistent with this opinion.
FACTS
¶ 5. Plaintiffs allege in their complaint that wrongdoing occurred with respect to four accounts beginning in February 2006. The complaint mentions accounts owned by Janelle, the Marital Trust, the Robert A. Pritchard Revocable Living Trust (“Living Trust”), and Robert and Janelle’s “joint accounts.”
¶ 6. On or around November 8, 2005, spouses Robert and Janelle opened a joint account. In connection with opening this account, on November 4, 2005, they signed an account agreement containing an arbitration provision. Robert died in May 2006, and Joseph White became the new co-trustee and, as signatory of his new trustee agreement, White agreed to mandatory arbitration.
¶ 7. The Living Trust was previously established on February 10, 2006. On November 30, 2007, White, as a new trustee, signed a “Trustee Agreement and Certification of Trust Investment Powers” form, wherein he agreed the account was subject to mandatory arbitration.
¶ 8. The Marital Trust was opened on December 3, 2007. In connection with opening this account, on November 30, 2007, White and Janelle, as co-trustees, both signed a “Trustee Agreement and Certification of Trust Investment Powers” form, which also included a mandatory-arbitration provision.
¶ 9. On January 31, 2008, Janelle signed a “Nonprobate Transfer on Death Agreement,” which was associated with her individual account and included a mandatory-arbitration provision.
¶ 10. All of the agreements referenced above contain mandatory-arbitration language that is virtually identical and include arbitration disclosures, an arbitration agreement, and an acknowledgment of receipt' of the arbitration agreement. Each account includes an arbitration-disclosure paragraph in bold type similar to the following:
Arbitration Disclosure
*794 11. This Agreement contains a predis-pute arbitration clause. By signing an arbitration agreement, the parties agree as follows:
(A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
(B) Arbitration awards are generally final and binding; a party’s ability to have a court reverse or modify an arbitration award is very limited.
(C) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
(D) The arbitrators do not have to explain the reason(s) for their award.
(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
(F) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
(G) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.
The arbitration provision contained in all of the agreements states in bold text:
I agree and, by carrying my account, [A.G.] Edwards[1] agrees that all controversies between me and [A.G.] Edwards or any of its present or former officers, directors, agents, or employees will be determined by arbitration. Any arbitration under this agreement will be before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc., or an arbitration facility provided by any other securities exchange of which [A.G.] Edwards is a member.

This arbitration provision applies to any controversy arising from events that occmred before, on or after I signed this agreement.

(Emphasis added).
¶ 11. Then, directly above the signature lines on the forms for each account, an acknowledgment similar to the following appears in bold type: “By signing this agreement, I acknowledge that: ... I have received and reviewed a copy of this agreement!;] • • • [and] [t]his agreement contains a binding and enforceable predis-pute arbitration clause!.]
STANDARD OF REVIEW
¶ 12. This Court reviews a decision to grant or deny a motion to compel arbitration de novo. E. Ford, Inc. v. Taylor, 826 So.2d 709, 713 (¶ 9) (Miss.2002). “In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry.” Id. The first prong includes two considerations: “(1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration agreement.” Id. “Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act.” Id. at (¶ 10) (citation omitted). The Mississippi Supreme Court has held that “[d]oubts *795 as to the availability of arbitration must be resolved in favor of arbitration.” IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 107 (¶ 46) (Miss.1998).
DISCUSSION
¶ 13. In its only issue on appeal, Wells Fargo argues that the trial court erred in refusing to enforce the arbitration agreements set forth in various securities-brokerage-account agreements, on the grounds that (1) one of the agreements, which contains retroactive time-specific language, is not enforceable because such agreement was not signed until after the events giving rise to the claim, and (2) this agreement contains contradictory and inconsistent statements that negate the arbitration clause. After reviewing the record, we find that the trial court erred in concluding that the agreements were ambiguous because they were inconsistent, contradictory, and lacking in mutual assent, and that Plaintiffs may not be compelled to arbitrate their claims against Wells Fargo.
¶ 14. Plaintiffs allege in their complaint that events giving rise to their negligence and conversion claims began as early as February 2006. They identify the following four accounts that were allegedly potentially mishandled: Janelle’s individual account; the Marital Trust account; the Living Trust account; and the joint accounts owned by Robert and Janelle. The record shows that the trial court questioned whether the arbitration agreement in the Marital Trust was enforceable, since the arbitration agreement was executed in November 2007, which was after some of the events giving rise to the complaint. The trial court ultimately concluded that due to this timing, the arbitration agreement was unenforceable. In reaching that conclusion, however, the trial court ignored the plain language of the agreement, which states in bold type: “This arbitration provision applies to any controversy arising from events that occurred before, on or after I signed this agreement.”
¶ 15. A review of precedent reflects the enforceability of arbitration agreements that provide that arbitration applies to events occurring prior to signature, if the agreement is otherwise enforceable under contract law. For instance, in Beneficial National Bank, U.S.A. v. Payton, 214 F.Supp.2d 679, 685 (S.D.Miss.2001), Payton argued that an arbitration provision added to his cardholder contract years after he entered into the contract could not be applied retroactively to cover his complaint, which was based on alleged wrongs that predated the agreement. The Court disagreed with this proposition, noting:
As numerous courts have recognized ... if an arbitration clause contains retroactive time-specific language, e.g., a phrase reading “this agreement applies to all transactions occurring before or after this agreement,” then the court may apply the arbitration provision to events relating to past events. Or, if the arbitration clause contains language stating that it applies to “all transactions between us” or “all business with us,” then the court may apply the arbitration clause retroactively.
Id. at 688-89 (footnote omitted). As noted above, the arbitration agreement for the Marital Trust contains both the time-specific language and the “all transactions” language. Thus, we find that the trial court’s denial of Wells Fargo’s motion to compel arbitration based upon the date of execution of the Marital Trust improper.
¶ 16. Moreover, the record shows that Plaintiffs were bound by the terms of Wells Fargo’s mandatory-arbitration provision as early as November 2005 by virtue of the joint account agreement they possessed with the banking institution. The record shows that on November 4, 2005, *796 Janelle and Robert signed an account agreement containing a mandatory-arbitration provision. Under the bold heading “About This Agreement,” it states that “[t]his Agreement ... [clovers all accounts that we have with [A.G.] Edwards at any time[;] [i]s in addition to and in no way limits any rights [A.G.] Edwards has under any other agreements between us and [A.G.] Edwards[;] [and i]s for the benefit of [A.G.] Edwards, its [successors and its assigns[.]” Beneath the bold heading “Arbitration Disclosure,” it states:
12. This Agreement contains a predis-pute arbitration clause. By signing an arbitration agreement, the parties agree as follows:
(A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
Under the bold heading “Arbitration Provision,” the agreement states:
I agree and, by carrying my account, [A.G.] Edwards agrees that all controversies between me and [A.G.] Edwards or any of its present or former officers, directors, agents or employees will be determined by arbitration.

This arbitration provision applies to any controversy arising from, events that occurred before, on or after I signed this agreement.

(Emphasis added). Finally, immediately above the Pritchards’ signatures, the agreement states in bold type:
By signing this agreement, we acknowledge that:
(A) We have received a duplicate of this agreement.
[[Image here]]
(C) This agreement contains a binding and enforceable predispute arbitration clause in paragraph 13 on page 2.
¶ 17. Associated with the Living Trust account is a November 30, 2007 “Trustee Agreement and Certification of Trust Investment Powers” form that White signed as trustee, wherein he agreed the account was subject to mandatory arbitration. Like the other agreements discussed herein, this one states in bold type that the agreement “applies to any controversy arising from events that occurred before, on or after I signed this agreement.”
¶ 18. As shown above, as early as November 2005, and throughout the relevant time period, Plaintiffs were bound by mandatory-arbitration provisions with Wells Fargo. The arbitration provisions Plaintiffs signed are broadly worded, clear, unambiguous, and similar to provisions routinely enforced by courts.[2] Plaintiffs’ allegations, which are based on the assets contained within their accounts and the servicing of their accounts, are indisputably within the scope of the arbitration agreements signed.[3] Therefore, this issue is without merit.
¶ 19. We likewise find that the trial court erroneously found the agreements contained contradictory statements *797 that negated the arbitration agreement associated with the Marital Trust. During a hearing before the trial court, the trial court asked counsel for Wells Fargo about the use of the word “action” versus “arbitration” in the client agreement for the Marital Trust. We acknowledge, however, that the record reflects that the trial court’s order provided no identification or recitation of the terms deemed contradictory and inconsistent that the trial court found negated the client agreement.
¶ 20. As explained by Wells Fargo, however, the use of the word “action” in the client agreement was essential to address those few situations where arbitration was not available to customers. A review of the Marital Trust agreement clearly reflects that the “action” language does not, as Plaintiffs suggest, describe a scenario in which Plaintiffs are required to arbitrate, while Wells Fargo may choose between an arbitration proceeding or a judicial action. “[Ujnless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.” Smith Barney, Inc. v. Henry, 775 So.2d 722, 725 (¶ 8) (Miss.2001) (citation omitted).[4] As such, this issue is without merit.
¶ 21. Based on the foregoing, we reverse the order of the Jackson County Circuit Court denying Wells Fargo’s motion to compel arbitration and stay proceedings, and we remand this case to that court for further proceedings consistent with this opinion.
¶ 22. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND JAMES, JJ„ CONCUR. MAXWELL AND FAIR, JJ„ NOT PARTICIPATING.

. This Court pauses to note that the agreements referenced above clarify that the agreements are for the benefit of A.G. Edwards’s successors and assigns, i.e., Wells Fargo.

. See Levine v. Merrill Lynch, Pierce, Fenner & Smith Inc., 639 F.Supp. 1391, 1397 (S.D.N.Y.1986) (noting that "[i]t is difficult to imagine language broader” than the phrase "any controversy”); Russell v. Performance Toyota, Inc., 826 So.2d 719, 723 (¶ 11) (Miss.2002) (finding that the broad language included in the arbitration agreement applied to the claims at issue).

. "When determining whether a valid arbitration agreement exists, we employ ordinary principles of contract law.” Harrison Cnty. Commercial Lot, LLC v. H. Gordon Myrick, Inc., 107 So.3d 943, 950 (¶ 15) (Miss.2013).

. "Mississippi has long observed a policy of favoring agreements to arbitrate, and this Court hesitates to disturb an agreement that knowledgeable and experienced parties freely enter into.” IP Timberlands, 726 So.2d at 107 (¶ 47).